## BIGHAM v. HAWKINS.

Properly construed, the allegations of the petition on the subject of fraud were insufficient to support an action for rescission.

JUNE 13, 1913.

Equitable petition. Before Judge Littlejohn. Sumter superior court. July 6, 1912.

E. D. Bigham instituted an action against C. C. Hawkins. The petition contained allegations of fact relied on to state a cause of action, and concluded with prayers for: (a) rescission of contract;

(*b*) recovery of a money judgment for the amount paid on the purchase-price; (*c*) process; (*d*) such other and further equitable relief as the facts and circumstances might authorize. The action was founded on two written instruments, both signed in duplicate by the respective parties, and set out in the petition, one being dated May 25, 1911, and the other November 28, 1911. Omitting the formal parts, they were as follows:

(1) "Witnesseth: that the said E. D. Bigham has this day bargained with C. C. Hawkins, for the purchase of the following-described land in Sumter county, Ga., namely: Lot of land No. (107) in the 27th district, containing 202½ acres, more or less; also, east half of lot of land No. (108) in the 27th district, containing 101¼ acres, more or less, whole aggregating (303¾) acres, more or less. The said E. D. Bigham has this day paid to said C. C. Hawkins five hundred ($500.00) dollars in cash on the purchase of said land; and it is agreed that said E. D. Bigham will pay to the said C. C. Hawkins for the balance of the purchase-money on said land three thousand ($3,000.00) dollars on the 1st of October, 1911, and fourteen thousand ($14,000.00) dollars on the 1st day of December, 1911, which three (3) sums is the entire purchase-price of said land. And when said amounts are all paid in full, the said C. C. Hawkins agrees that he will make good and warrantee titles to the said E. D. Bigham, or his assigns, to said land. It is understood and agreed that the five hundred dollars this day paid by the said E. D. Bigham shall go as part of the purchase-money on said land only in the event that the three thousand ($3,000.00) dollars due on the 1st day of October be promptly paid. In the event that said three thousand dollars be not promptly paid on the 1st day of October, 1911, then the five hundred dollars paid this day shall be forfeited by the said E. D. Bigham to the said C. C. Hawkins as liquidation [liquidated] damages, and all rights under this contract to the said E. D. Bigham shall cease,— time being of the essence of this contract. It is understood and agreed that the said E. D. Bigham may have possession of the land as soon as the three thousand ($3,000.00) dollars has been paid and C. C. Hawkins can conveniently gather the crop on the land that is planted and growing for the year 1911; it being the intention of the parties hereto that said E. D. Bigham may have the privilege of sowing down whatever lands he may wish in oats as

soon as the said C. C. Hawkins can turn over the land in the fall after gathering the crop thereon, the entire possession being given as soon as the last payment on the land is made."

(2) "Witnesseth: that the said E. D. Bigham has this day secured from C. C. Hawkins, an option for the purchase of the following-described lands in Sumter county, Ga., viz.: Lot of land No. 107 in the 27th district, containing 202½ acres, more or less; also the east half of lot of land No. 108 in the 27th district, containing 101¼ acres; whole aggregating 303¾ acres, more or less. It is agreed that the said E. D. Bigham shall have the right to purchase of the said C. C. Hawkins the above-described lands up to and including March 1st, 1912, for the sum of fifteen thousand ($15,000.00) dollars, which, if the said E. D. Bigham well and truly purchase and pay the said sum of fifteen thousand dollars cash, the said C. C. Hawkins binds himself and assigns to make good and sufficient titles to the said E. D. Bigham, or his assigns. It is understood and agreed that the said option shall extend only until March 1st and including March 1st, 1912, time being of the essence of this contract; and if the said E. D. Bigham shall not, within said time, purchase said land and pay said sum of money, then all rights under this contract shall cease, determine, and be void, and whatever sum may have heretofore been paid to the said C. C. Hawkins on account of any contemplated purchase heretofore made shall be forfeited to the said C. C. Hawkins as liquidated damages. It is further understood and agreed, that if the said E. D. Bigham shall, on or before March first next, pay the said C. C. Hawkins the purchase-price of said land, then he shall also have the option to purchase all the personalty, such as mules, plows, feed-stuff, and farming implements that the said C. C. Hawkins may have and hold necessary to run the place to make a crop for the year 1912, and also to pay all debts that the said C. C. Hawkins may have to incur on account of his farming relations in renting said place for the year 1912; and in the event that the said E. D. Bigham pay all of said farming debts and purchases all the personalty, and assumes all obligations incurred for the renting of said place, including fertilizers, debts to hands and assumed by hands, then the said E. D. Bigham shall have the right to take immediate charge of the said place. It is understood and agreed that the said C. C. Hawkins shall not charge more than the actual market price

for any of the articles that the said E. D. Bigham may desire to purchase in exercising this option; the two parties hereby contracting mutually to carry out these ends and intentions in the best of spirit. It is further agreed that if the said E. D. Bigham does not choose to exercise this option in purchasing the personalty and assuming of the debts after he has purchased said plantation, the said C. C. Hawkins, agrees to rent the place for the sum of $560.00, and when this contract has been carried out, and the said E. D. Bigham may have paid for said place and received deeds, the said C. C. Hawkins will execute to the said E. D. Bigham his promissory notes for said rent."

According to the allegations of the petition, the first deferred payment of $3,000 was not made on October 1st, the date of its maturity under the first contract, but $2,000 thereof was paid on the succeeding day, or 2d of October; and thus the transaction remained until the second instrument was executed about two months later. After the execution of the second contract, Bigham, having arranged with a third person for a loan of $8,000.00 on the property for the purpose of applying the same on the purchase-price, entered into a further agreement with Hawkins, in pursuance of which Hawkins, on the 22d day of December, executed a deed to Bigham to the land for the purpose of enabling him to use the property as security for the loan. The loan was obtained and the proceeds paid over to Hawkins. After executing a deed to the lender of the money, Bigham on the 23d day of December, 1911, reconveyed the land to Hawkins, to be held until the balance of the purchase-price, amounting to $7,000, should be paid. Hawkins continued in possession subject to the terms and conditions set forth in the contract. Nothing further appears to have been done until Bigham, on the 29th of February, 1912, instituted the present suit. The allegations relied on as a basis for the relief sought were to the effect, that, before the purchase of the land, petitioner inquired of defendant as to the well-water on the land, and whether a certain basin on the farm, which was at that time dry, was a pond or would pond later, in response to which defendant represented to petitioner that the water on the place was good, pure water, and that the basin would not pond or hold water, "and after your petitioner had seen said place" defendant represented that he had done a great deal of ditching and that there was no place on the land that would pond

water, but as fast as the water would fall it would seep through the ground. Petitioner relied upon such representations of the defendant when he entered into the contract of purchase, and had he known at that time that the representations were untrue he would not have entered into the contracts of purchase for the consideration named. When the representation was made, and when the suit was filed, the principal well on the place was supplying "water containing a good many worms and other insects. So much so that the people using said water have to, and they do, strain the same for the purpose of getting out of the water said worms and insects. That new cloths are used daily in straining said water. That this condition of said water was, at the time of the making of the representation as aforesaid, well known to said defendant. Petitioner shows that said water, instead of being pure, it is well impregnated with animal matter, and is anything else put pure." Also, at the time of the contract of purchase, and when the suit was filed, a portion of the land was so situated that it would pond water, which fact was well known to defendant, there being a pond "on said tract covering an area of about twenty acres of land, a portion of this pond being at a depth of about four feet. That said water has accumulated and ponded until it has extended up to and under one of the tenant-houses on said land and ponded around a well of water near said tenant-house a depth of about eight inches. That while it is true that since last December there has been excessive rains, yet the said defendant assured and represented to your petitioner that he had so ditched said land that no part of it would pond water. . . That while your petitioner had seen said basin which is now full of water, he specifically asked the defendant if water would not accumulate and pond in said basin, and in response to said inquiry defendant made the representations and statements hereinabove alleged." On account of the condition of the well the land is less valuable and is not suited for the purposes for which it was purchased. Petitioner is not advised as to whether the condition of the water is peculiar to this one well, or whether it can be overcome by sinking another well in a different locality; but petitioner avers that the well-water is totally useless for any purpose whatever. The pond of water renders the place less valuable, because it renders cultivation of the land impossible, unless the pond is drained at a very great cost. The pond is about 300 yards from the residence;

and this fact renders the property less valuable, because the pond is unsightly, "and when it begins to dry up it will create sickness and will in many ways make said place undesirable and unhealthy." The property was purchased by petitioner with the view of making it his home, and this is why he specifically inquired in regard to the water on the place, and whether the basin would pond water. It was further alleged: "That your petitioner has complained to the defendant of the condition of said well and of the ponding of said water on said land, and has asked for a rescission of the contract and a refund of the money that has been paid on the purchase-price of the same. That he likewise stated to the defendant that if he would make proper reduction for a reasonable concession, on account of the unfavorable conditions of said tract of land, that he would still pay a reasonable part of the purchase-price and carry out his contract. That your petitioner avers that said defendant refused to make any concession, and also refused to return or refund to your petitioner the money that has been paid by petitioner to defendant and the purchase of said land."

The case was dismissed on demurrer, and the plaintiff excepted.

*R. L. Maynard,* for plaintiff.

*Shipp & Sheppard,* for defendant.

ATKINSON, J. This is an effort by a purchaser to procure a decree rescinding a contract for the sale of land, and to recover a personal judgment for so much of the purchase-price as had been paid. Before a money judgment could be recovered there would have to be rescission, because the contract is conclusive upon the parties so long as it stands. Fraud is relied on as the ground of rescission. The judgment complained of was rendered on demurrer, and resulted in a dismissal of the plaintiff's action by the court. The controlling question is whether or not the allegations charge fraud upon the part of defendant, thereby inducing plaintiff to enter into the contract. The petition should be construed most strongly against the pleader. Representations as to the quality of well-water on the land constituted the basis of·one of the charges of fraud, while the other related to representations of the defendant in regard to the ponding of water in a certain low place or basin on the land. There were no charges of fraud upon any other subject connected with the transaction. Under a fair construction of the petition, the representations attributed to the defendant in

regard to well-water should not be held to apply to any particular existing well, but to well-water generally to be obtained on the farm. The plaintiff did not pretend to allege that pure well-water could not be obtained on the farm, but the allegations complaining of well-water had reference to a single well which was alleged to be in a condition which every one knows could be brought about in any well by nonuse or insufficient cleansing. The fact that this one well might have been in the condition as described, when compared to the representations attributed to the defendant, would not be sufficient to show that the representations were falsely or fraudulently made.

In regard to the basin it is manifest from the allegations of the petition that the plaintiff as well as the defendant, before the first contract was made, examined the land and saw its condition. From the allegations it appears that the thing complained of was pointed out by the plaintiff to defendant at the time the alleged representations were made, and before the first contract was made, which occurred in May, 1911. The representations were to the effect that defendant had done a great deal of ditching, and the land was porous, and therefore water would not pond on the place. It is not alleged that this statement was false, in that the land was not porous, and that there were no ditches, which together were sufficient, at the time the representations were made, to prevent the ponding of water. In one portion of the petition it was alleged that the basin was dry when the representations were made; in another, that it ponded water to the depth of several feet covering a large area. It is difficult to reconcile this repugnancy. If the water was actually ponded, the condition was obvious to the plaintiff, and he could not thereby have been deceived. On the other hand, if it was dry, the inference would be that it was properly drained. Such an inference would be reasonable and consistent with the truthfulness of the representation, and, in the absence of allegations to the contrary, should be given effect. The representations were made before the first contract, which was executed about six months before the second contract was made in November, 1911, and nine months before suit was filed in February, 1912. In the meantime there had been excessive rains. Under such conditions natural agencies would tend to clog and fill the ditches and destroy their efficiency for drainage purposes, and probably did so. An allegation that

after so long a time, under such circumstances, the water ponded, is not the equivalent of an allegation that at the time the representation was made it was false and known to be such.

The allegations as a whole were insufficient to form a basis for a charge of fraud upon the part of defendant, and the case was properly dismissed on general demurrer.

*Judgment affirmed. All the Justices concur.*